929 P.2d 69

STATE of Hawai'i, Plaintiff–Appellant,

v.

Francis K. ONTAI, Defendant–Appellee,

and

Wade S. Nagata, Defendant.

No. 18145.

Supreme Court of Hawai'i.

Nov. 21, 1996.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant.

John D. Yamane, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiff–Appellant State of Hawaiʻi (the prosecution) appeals from the findings of fact, conclusions of law, and order granting Defendant–Appellee Francis K. Ontai's motion to dismiss indictment with prejudice as to Count II. Count II of the indictment alleged that Ontai committed Unlawful Ownership or Operation of Business, in violation of Hawaiʻi Revised Statutes (HRS) §§ 842–2(3) and 842–3 (1993).[1]

1. HRS ch. 842 is Hawaiʻi's version of the federal Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. ch. 96. HRS § 842–2 (1993) provides in relevant part:

**Ownership or operation of business by certain persons prohibited.** It shall be unlawful:

. . . .

(3) For any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt.

HRS § 842–3 (1993) provides:

**Penalty; forfeiture of property.** Any person who violates this chapter shall be guilty of a class B felony and shall be fined not more than $10,000, or sentenced to an indeterminate term of imprisonment of ten years without possibility of suspension of sentence or probation, and shall forfeit to the State any interest or property acquired or maintained in violation of this chapter as provided in chapter 712A.

HRS § 842–1 (1993) provides in relevant part:

**Definitions.** As used in this chapter:

On appeal, the prosecution argues: (1) the circuit court applied an incorrect definition of "enterprise" when it dismissed the indictment against Ontai; and (2) the prosecution produced sufficient evidence to support the indictment.[2] We affirm the circuit court's order; however, we do so based on reasoning slightly different from that of the circuit court.

## I. FACTUAL BACKGROUND

On August 17, 1993, Officer Bryan Hew of the Honolulu Police Department testified in proceedings before a grand jury as follows. Officer Hew was assigned as an undercover officer for the narcotics/vice division, gambling detail. He had received special training on the game of dice or craps. In this game, "[p]ersons gather around a crap table or dice table, wager on different betting schemes, on what they believe the outcome of the roll will be." On June 15, 1991, Officer Hew went to 94–075 Poailani Circle and saw approximately twenty people gathered around a dice table. Wade Nagata was standing at one side of the table acting in the capacity of "box man." A box man is "the person responsible for paying off and accept-

ing the wagers on the no-pass, the field, or the over-under betting schemes." Ontai stood on the other side of the table, with a croupier stick in his hand, acting in the capacity of "stick man." A stick man is "the person that controls the dice, passes them to the current roller, [and] keeps track of the current roller's point. He also accepts the pass bet from the roller and solicits counter wagers from various players around the table."

Officer Hew placed numerous bets with Nagata for a total amount of $1100. While Nagata accepted the bets, Ontai controlled the tempo of the game. He made sure that Nagata's wagers were set and settled before he would pass the dice to the roller. He also solicited the counter wagers from the roller and aided Nagata by soliciting wagers for field and over-under schemes.

Based on Officer Hew's testimony, the grand jury indicted Ontai for Promoting Gambling in the First Degree, in violation of HRS § 712–1221(1)(c) (Supp.1991);[3] and Unlawful Ownership or Operation of Business, in violation of HRS §§ 842–2(3) and 842–3 (1993).[4] Thereafter, a grand jury

---

"Enterprise" includes any sole proprietorship, partnership, corporation, association, and any union or group of individuals associated for a particular purpose although not a legal entity.

. . . .

"Racketeering activity" means any act or threat involving, but not limited to murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, theft or prostitution, or any dealing in narcotic or other dangerous drugs which is chargeable as a crime under state law and punishable by imprisonment for more than one year.

2. The prosecution also argues that the circuit court abused its discretion in dismissing the indictment with prejudice rather than without prejudice. However, the prosecution failed to raise this issue as a separate point of error. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28 provides in relevant part:

BRIEFS.

. . . .

(b) Opening Brief. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(4) A concise statement of the points on which the appellant intends to rely, set forth in

separate numbered paragraphs. Each point shall refer to the alleged error committed by the court or agency upon which appellant intends to rely....

. . . .

Points not presented in accordance with this section will be disregarded, except that the court, at its option, may notice plain error not presented.

Therefore, we will disregard the prosecution's abuse of discretion argument. Furthermore, because there is no evidence that the circuit court acted irrationally or disregarded applicable law, we will not apply the plain error doctrine.

3. HRS § 712–1221(1)(c) (Supp.1991) provides in relevant part:

**Promoting gambling in the first degree.** (1) A person commits the offense of promoting gambling in the first degree if he knowingly advances or profits from gambling activity by:

. . . .

(c) Receiving or having become due and payable in connection with a lottery, mutuel, or other gambling scheme or enterprise, more than $1,000 in any seven day period played in the scheme or enterprise.

4. See supra note 1.

bench warrant was issued and Ontai was arrested.

Before trial, Ontai filed a motion to dismiss both counts of the indictment on the grounds that there was insufficient evidence presented to the grand jury to support a finding of probable cause. On January 18, 1994, a hearing was held on the motion and the court took the matter under advisement. On May 19, 1994, the circuit court issued its findings of fact, conclusions of law, and order granting Ontai's motion to dismiss with prejudice as to Count II. The court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. That Francis Ontai was charged in Count II, Illegal Ownership of a Business, in violation of H.R.S. § 842–0002[sic], as a result of an investigation by an undercover officer, Bryan Hew.

2. The undercover officer testified to the Grand Jury that on one date June 15, 1991 he observed a dice game during which Defendant Ontai acted as a stick man and Defendant Wade Nagata acted as a box man, and that Hew placed bets of $1,100.00 with Defendant Nagata.

3. The Grand Jury transcript indicates that Ontai was acting as a stick man only on that date, and that there was no other evidence that there was any other gambling activity, except for that date.

### CONCLUSIONS OF LAW

1. Based upon the foregoing, this Court concludes that as a matter of law that HRS § 842–2(3) requires evidence of an enterprise. In the case of *U.S. v. Turkett* [sic], 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) which case interpreted the Federal version of § 842–2(3), the U.S. Supreme Court indicated that an "enterprise" was an entity "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

2. There is insufficient evidence to show that, based upon this one occasion, there was an entity which satisfied the test

laid down in *Turkett* [sic], and the State has failed to provide enough evidence to the Grand Jury, even when viewed in the light most favorable to the State and drawing very [sic: "every"] reasonable inference therefrom, to show all of the elements of the crime charged.

Thereafter, the prosecution timely appealed.

## II. DISCUSSION

### A. Whether the Circuit Court Applied an Incorrect Definition of "Enterprise"

#### 1. Standard of Review

■ "An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong standard." *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (quoting *Maria v. Freitas,* 73 Haw. 266, 270, 832 P.2d 259, 262 (1992)).

#### 2. Analysis

The prosecution argues that the circuit court applied an incorrect definition of the term "enterprise" when it dismissed the indictment against Ontai. According to the prosecution, the court should have applied the statutory definition found in HRS § 842–1 [5] rather than the definition found in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The prosecution argues that because the statutory definition is clear and unambiguous on its face, the circuit court should have applied the statute's plain meaning.

We have repeatedly held that in construing statutes:

the fundamental starting point is the language of the statute itself.... [W]here the language is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.... When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. Put differently, a statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses. In construing an ambiguous

5. *See supra* note 1.

statute ... the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995) (internal quotation marks, ellipses, and citations omitted).

■ In the present case, the language of HRS § 842–1 does provide a definition of "enterprise." The portion of the statutory definition relevant to this case is: "[A]ny ... group of individuals associated for a particular purpose although not a legal entity." However, this definition is not entirely satisfactory for two reasons. First, the definition does not specify how long the individuals must be associated. Reasonably well-informed people could interpret the word "enterprise" as referring only to a long-term association, or they could interpret the word as also referring to an association lasting for a single event. Thus, the word "enterprise" carries "doubleness of meaning." Second, the statutory definition does not specify the amount of structure the enterprise is required to possess. Reasonably well-informed people could interpret "enterprise" as requiring an organizational structure beyond the racketeering acts, or they could interpret the word as requiring only the structure necessary to commit the acts. Thus, the word "enterprise" carries "doubleness of meaning" in this respect as well. For these reasons, the statute is ambiguous and construction is warranted.[6]

The legislative history of HRS § 842–2 provides some guidance. The original act passed by the legislature indicated that the statute was primarily directed against "organized crime":

The Legislature finds that *organized crime* with its increasing affluence and power resulting from the investment of large sums of illegally procured wealth poses a significant threat to the safety and welfare of the State of Hawaii and that such illicit capital, seeking the protection of the corporation and other business laws of the State, could finance *organized crime* under the authority of law by creating legal entities fully clothed with respectability and capable of holding legal title to property.

The purpose of this Act is to authorize the attorney general to bring actions to forfeit the charters of domestic corporations, to cancel registrations and licenses of foreign corporations, to enjoin the operations of unincorporated businesses when such entities are infiltrated by *organized crime*, and further, to prohibit the ownership or operation of business by certain persons; to provide penalties and provisions for forfeiture of property; to provide provisions of restraining orders, civil remedies, evidence, civil investigative demands, prohibited affirmative defense, and the inspection of tax records by chiefs of police.

1972 Haw. Sess. L. Act 71, § 1 at 280. The committee reports likewise indicate that HRS § 842–2 was directed against organized crime: "The purpose of this bill is to curtail organized criminal activity in Hawaii." Hse. Stand. Comm. Rep. No. 668–72, in 1972 House Journal, at 967; Sen. Stand. Comm. Rep. No. 492–72, in 1972 Senate Journal, at 956; Hse. Stand. Comm. Rep. No. 728–72, in 1972 House Journal, at 1006. The term "organized crime" implies some kind of organization. It suggests that the statute was not directed against individual criminals or even criminals who are temporarily co-operating. Therefore, the legislative history of HRS § 842–2 indicates that "enterprise" means a long-term organization that possesses some structure beyond that required for the racketeering acts.

---

**6.** The fact that a statute is ambiguous and requires statutory construction does not necessarily mean that it is unconstitutionally vague. *State v. Buch*, 83 Hawai'i 308, 319–20, 926 P.2d 599, 610–11 (1996). The test for vagueness is that:

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation.... Consequently, no more than a reasonable degree of certainty can be demanded.

*Id.* (quoting *State v. Marley*, 54 Haw. 450, 460, 509 P.2d 1095, 1103 (1973)). Although the term "enterprise" in HRS § 842–2 is ambiguous for purposes of statutory construction, it provides a reasonable degree of notice and therefore does not render the statute unconstitutionally vague.

However, the most useful source in interpreting HRS § 842-2(3) is federal law. "[I]n instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance." *Price v. Obayashi*, 81 Hawai'i 171, 914 P.2d 1364, 1374 (1996). In the present case, federal law is an important aid to construction because HRS § 842-2 was derived from the federal Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. ch. 96. The House Judiciary Committee of the Hawai'i legislature noted:

> Your Committee has further amended this bill by incorporating applicable provisions of *federal law relating to racketeer influenced and corrupt organizations to be found in Chapter 96 of the United States Code Annotated.* Those provisions directed particularly at individuals, prohibit racketeering activities, and provide criminal penalties, civil remedies, provisions on evidence and civil investigative demand.

Hse. Stand. Comm. Rep. No. 728-72, in 1972 House Journal, at 1006-07 (emphasis added).

The language of HRS § 842-2(3) is virtually identical to that of 18 U.S.C. § 1962(c).[7] The only material differences between the two statutes are the references to "interstate or foreign commerce" and a "pattern of racketeering activity."[8] Furthermore, both statutes define "enterprise" in virtually identical language.[9] For these reasons, we can resort to federal case law for guidance in the present case.

The extensive federal case law defining "enterprise" is based on dicta found in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981):

> In order to secure a conviction under RICO, the government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. *The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.* The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.
>
> While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Id.*, at 583, 101 S.Ct. at 2528-29 (emphasis added). Thus, under *Turkette*, the "enterprise" is an ongoing organization in which the various associates function as a continuing unit. Therefore, on the question of how

---

7. HRS § 842-2(3) (1993) provides:

   It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of unlawful debt.

   18 U.S.C. § 1962(c) (1994) provides:

   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

8. The reference to "interstate or foreign commerce" is due to the requirements of the Commerce Clause of the United States Constitution.

   *See* U.S. Const. art. I, § 8. The reference to a "pattern of racketeering activity" is due to the fact that the federal statute requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5) (1994). The Hawai'i statute only requires one act. HRS § 842-1 (1993).

9. HRS § 842-1 (1993) provides in relevant part:

   "Enterprise" includes any sole proprietorship, partnership, corporations, association, and any union or group of individuals associated for a particular purpose although not a legal entity.

   18 U.S.C. § 1961(4) (1994) provides in relevant part:

   "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

long the association of individuals must last, *Turkette* defines "enterprise" as a long-term organization.

However, *Turkette* did not specifically address the question of how much structure an enterprise must have. In subsequent cases, federal courts have been divided on this issue. Seven circuits have required the enterprise to have a structure above and beyond the racketeering activity in which it engages. *See United States v. Riccobene*, 709 F.2d 214, 223–24 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir. 1985); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir.1995) (citing *United States v. Neapolitan*, 791 F.2d 489, 499–500 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986)); *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *Chang v. Chen*, 80 F.3d 1293 (9th Cir.1996); *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).[10] As the basis for their position, these circuits rely on the language in *Turkette* stating that "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529.

Two circuits, however, take a different position on the question of structure. They hold that it is not necessary for the enterprise to have any structure beyond its predicate acts of racketeering. *See United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 134, 78 L.Ed.2d 128 (1983); *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983). These circuits also rely on language

found in *Turkette*; however, they focus on the passage stating that the proof used to establish the enterprise and the pattern of racketeering activity "may in particular cases coalesce." *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529.

In light of federal case law, we hold the following regarding the enterprise element of HRS § 842–2(3). We adopt the requirement in *Turkette* that an enterprise must be an ongoing organization with continuity of personnel. We further adopt the majority view on the question of structure; an enterprise must have a structure above and beyond the racketeering activity in which it engages.

The Eighth Circuit has developed a coherent and comprehensive definition which includes all the characteristics that we deem relevant to an "enterprise" under HRS § 842–2(3). Therefore, we adopt this definition. According to the Eighth Circuit, there are three characteristics of a RICO enterprise:

First, there must be a common or shared purpose that animates the individuals associated with it. Second, it must be an "ongoing organization" whose members "function as a continuing unit," *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528; in other words, there must be some continuity of structure and of personnel. Third, there must be an ascertainable structure distinct from that inherent in the conduct of ... racketeering activity.

*United States v. Kragness*, 830 F.2d 842, 855 (8th Cir.1987) (citing *Bledsoe*, 674 F.2d at 664–65). The first characteristic incorporates the requirement of a common or "particular" purpose found in HRS § 842–1. The second characteristic incorporates the requirements of *Turkette*. The third characteristic incorporates the majority view on structure.

---

**10.** Although some of these cases are civil rather than criminal actions, "there appears to be little reason to interpret the enterprise requirement differently in civil and criminal RICO cases." *Chang*, 80 F.3d at 1297 n. 1. The requirements of a RICO violation are set out in 18 U.S.C. § 1962(c) and apply to both civil and criminal actions. The only difference is in the remedy, with 18 U.S.C. § 1963 providing for criminal sanctions and 18 U.S.C. § 1964 providing for civil sanctions. *Id.*

■ We· adopt this comprehensive definition of "enterprise" because any other approach would risk duplicating our existing criminal statutes. It is the enterprise element that distinguishes HRS § 842–2 from the predicate offense itself,[11] accomplice liability,[12] or conspiracy.[13] For this reason, the enterprise element should be well-defined. If proof of the racketeering activity alone were enough to satisfy the enterprise element, there would be little difference between a violation of HRS § 842–2 and the other offenses. "[T]he purpose of RICO is to eradicate organized crime, rather than to subject ordinary criminals to the Act's heightened punishment. To guarantee that RICO will be utilized against its intended target, the 'enterprise' alleged must involve more than an association of criminals for the commission of sporadic crime." *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir.1982) (citations omitted), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). Another problem is that because HRS § 842–2 does not require proof of a single agreement, as in a conspiracy, there is the danger that the statute would constitute guilt by association. *See Bledsoe*, 674 F.2d at 647. In addition, the Hawai'i statute requires only one act of racketeering activity. HRS § 842–1 (1993). The federal statute, in contrast, requires a "pattern of racketeering activity" consisting of at least two acts. 18 U.S.C. § 1961(5) (1993). Because the racketeering activity element is easier to satisfy under HRS § 842–2, the enterprise element becomes that much more important. For all these reasons, we have decided to adopt the foregoing definition of "enterprise."

11. *See, e.g., supra* note 3.

12. HRS § 702–222 (1993) provides:
   **Liability for conduct of another; complicity.** A person is an accomplice of another in the commission of an offense if:
   (1) With the intention of promoting or facilitating the commission of the offense, the person:
   (a) Solicits the other person to commit it; or
   (b) Aids or agrees or attempts to aid the other person in planning or committing it; or
   (c) Having a legal duty to prevent the commission of the offense, fails to make reasonable effort so to do; or

## B. Whether the Prosecution Produced Sufficient Evidence to Support the Indictment

### 1. Standard of Review

■ "A grand jury indictment must be based on probable cause." *State v. Okumura*, 59 Haw. 549, 550, 584 P.2d 117, 119 (1978). Probable cause is established by "a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *State v. Chung*, 75 Haw. 398, 409–10, 862 P.2d 1063, 1070 (1993). "The evidence to support an indictment need not be sufficient to support a conviction." *State v. Ganal*, 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996). "In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, 'every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for [that of] the Grand Jury.'" *Id.* (quoting *State v. Kuba*, 68 Haw. 184, 191, 706 P.2d 1305, 1310–11 (1985)).

### 2. Analysis

■ An "enterprise," as defined in Part II.A.2, *supra*, requires a common purpose, continuity of structure and personnel, and an ascertainable structure distinct from the racketeering activity. In order to avoid dismissal of an indictment, the prosecution must produce evidence of an enterprise that satisfies each of these three characteristics.

(2) The person's conduct is expressly declared by law to establish the person's complicity.

13. HRS § 705–520 (1993) provides:
   **Criminal conspiracy.** A person is guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a crime:
   (1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the definition of the offense; and
   (2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy. ·

■ A common purpose is shown by evidence that the individuals involved shared the same goal or objective. In the present case, the common purpose is clear—making money from gambling activities.

■ Continuity of structure is shown by "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." *Kragness*, 830 F.2d at 856. Continuity of personnel is shown by "associational ties [among the individuals that] amount to an organizational pattern or system of authority." *Id.* (quoting *Lemm*, 680 F.2d at 1199). This continuity does not have to be absolute; the group's system of authority may change, old members may leave, and new members may join. *Id.* In the present case, no evidence was produced as to the continuity of the alleged enterprise. There was no evidence that the crap game of June 15, 1991 was operating on a continuing basis rather than on an ad hoc basis. There was no evidence that the personnel involved, Ontai and Nagata, were part of a continuing staff rather than independent actors.

■ An ascertainable structure distinct from the racketeering activity is shown by applying a simple test developed by the Eighth Circuit: Set aside evidence of the predicate acts of racketeering; if there is still evidence of other legal or illegal acts that show an ongoing organization, there is a distinct structure. *Lemm*, 680 F.2d at 1201. In the present case, if we set aside the evidence of the crap game on June 15, 1991, no evidence is left. Therefore, there was no evidence of a structure distinct from the predicate act of promoting gambling.

Because the evidence presented to the grand jury did not satisfy two out of the three characteristics of an "enterprise," there was insufficient evidence to support the indictment. We acknowledge that the evidence necessary to support an indictment is less than the evidence necessary to support a conviction. *Ganal*, 81 Hawai'i at 367, 917 P.2d at 379. However, at least *some* evidence must be produced. Here, the prosecution failed to produce evidence of an enterprise that fit the required characteristics. In other words, there was *no* evidence of an "enterprise" as defined in Part II.A.2, *supra.* If no evidence is produced as to a material element of the offense, a person of ordinary caution and prudence could not have a "strong suspicion" that the defendant is guilty of the crime. Furthermore, because the enterprise element is the crucial element that distinguishes HRS § 842–2 from other offenses, it is especially important that at least some evidence of an enterprise, as defined in this opinion, be presented to the grand jury.

The prosecution argues that the existence of an enterprise can be inferred from the fact that the crap game was "well planned and sophisticated." The "cooperative effort" between Ontai and Nagata "implicitly evinced an organizational structure." We disagree. The enterprise must have continuity of structure and personnel, as well as a structure distinct from the racketeering activity. Here, the prosecution's evidence is drawn entirely from the predicate act of promoting gambling. At most, the grand jury record in the present case indicates that Ontai and Nagata ran a well-organized crap game on June 15, 1991. It indicates nothing about any organization beyond the crap game, or about the continuity of such an organization. The prosecution simply failed to produce evidence of an enterprise that fits the characteristics we require.

### III. *CONCLUSION*

Accordingly, we affirm the circuit court's order granting Ontai's motion to dismiss indictment with prejudice as to Count II.