**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000552
28-JUL-2021
07:57 AM
Dkt. 39 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
YOONJUNG PARK, aka Suji, Defendant-Appellee,
and
MEI YING ZHANG, aka Lulu, and TOK SIM KWON, aka Mama Tina,
Defendants


NO. CAAP-20-0000552


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-18-0001687)


JULY 28, 2021


LEONARD, PRESIDING JUDGE, HIRAOKA AND WADSWORTH, JJ.


OPINION OF THE COURT BY HIRAOKA, J.


Defendant-Appellee Yoonjung **Park** was indicted by a
grand jury for violation of the Organized Crime law, Hawaii
Revised Statutes (**HRS**) Chapter 842.[1]  Park moved to dismiss the

---

[1]  The Organized Crime law is Hawaii's version of the federal
Racketeer Influenced and Corrupt Organizations (**RICO**) statute, 18 U.S.C.
§§ 1961-1968.

indictment. The Circuit Court of the First Circuit[2] granted Park's motion. The circuit court concluded that Plaintiff-Appellant **State** of Hawai'i "failed to produce evidence of an enterprise[,]" citing State v. Ontai, 84 Hawai'i 56, 929 P.2d 69 (1996). The State appealed. We distinguish Ontai, which involved an alleged associated-in-fact enterprise; we hold that a limited liability company qualifies as a legal-entity "enterprise" as defined by HRS § 842-1. We also hold, however, that the State failed to present evidence that Park "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise" within the meaning of HRS § 842-2. Accordingly, we affirm the circuit court's dismissal of the indictment as to Park, but for a different reason than that given by the circuit court.

## PROCEDURAL HISTORY

On October 30, 2018, the O'ahu grand jury heard testimony from three witnesses. The first witness (**Jason**) testified pursuant to a plea agreement. He described going to a place called **"Roses"** — located in a building on Young Street — three times in 2018. His first time was in February. He was taken to a room by a woman called a "mama-san." He paid the mama-san a $50 house fee. The mama-san brought a woman to the room. The woman showered with Jason. Jason paid the woman $150. Jason and the woman then had sexual intercourse.

---

[2]     The Honorable Catherine H. Remigio presided.

Jason went back to Roses in March. He paid the mama-san the $50 house fee and was taken to a room. The mama-san brought a woman to the room. The mama-san said the woman's name was "Suji." Jason and Suji showered. Jason paid Suji $150. They then had sexual intercourse.

Jason next went to Roses in June. He called Roses and made an appointment to see Suji. He drove to Roses. He paid the mama-san the $50 house fee. He was taken to a room. Suji came to the room. They had sexual intercourse. Jason then paid Suji $150. Jason was later shown a photographic lineup and identified Park as the woman he knew as Suji.

The next witness was a woman named **Okku,** who also testified pursuant to a plea agreement. Okku started working at Roses in January 2018. Roses was owned by Mama Sami. There was also a Mama Tina, who worked at night. The mama-sans did the cleaning and cooking, answered the phones, collected the house fees, and sent customers to the women's rooms. Okku worked at Roses with three other women, one of whom was known as Suji. They all engaged in sex for money. Suji lived at Roses, worked 7 days a week, and had regular customers. Another woman was called "Lulu." Lulu worked at Roses every day and had five customers per day.

The third witness was an investigator from the Honolulu Prosecutor's Office. The investigator testified that Roses' legal name was "Belabration and Roses Spa LLC." It was a Hawaiʻi limited liability company in 2017 and 2018. The investigator

3

participated in executing a search warrant at Roses. He found Park there. In Park's room he "found condoms, U.S. currency, three cell phones, and vaginal insert lubes." The investigator showed a photographic lineup to Jason, who identified Park as the person he knew as Suji. The investigator showed a photographic lineup to Okku, who identified Park as the person she knew as Suji. The investigator also testified about a website that advertised prostitution. Roses had several ads on this website featuring Suji/Park.

The grand jury indicted Park and two others for Unlawful Ownership or Operation of Business in violation of HRS § 842-2(3) (**Count 1**).[3] Park was charged with conducting or participating in conducting the affairs of Belabration and Roses Spa LLC through Prostitution in violation of HRS § 712-1200[4] and/or Promoting Prostitution in violation of HRS § 712-1203.[5]

On January 22, 2019, Park moved to dismiss Count 1 of the indictment. The motion was heard on June 8, 2020. The

---

[3] One of the other defendants was also charged with Promoting Prostitution (Count 2), but Park was only charged in Count 1.

[4] HRS § 712-1200 (Supp. 2017) provides, in relevant part:

§ 712-1200 **Prostitution.** (1) A person commits the offense of prostitution if the person:

(a) Engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee; or

(b) Pays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct.

[5] HRS § 712-1203 (Supp. 2017) provides, in relevant part:

§ 712-1203 **Promoting prostitution.** (1) A person commits the offense of promoting prostitution if the person knowingly advances or profits from prostitution.

4

circuit court's "Findings of Fact, Conclusions of Law and Order Granting Motion to Dismiss Count 1 of the Indictment" was entered on August 10, 2020.  This appeal followed.

## POINTS OF ERROR

The State challenges finding of fact no. 9, which is actually a mixed finding of fact and conclusion of law.  It states:

> 9.    In short, the evidence against Yoonjung Park amounted to three acts of prostitution with [Jason].  There was absolutely no evidence presented that Yoonjung Park "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise through racketeering activity."  Yoonjung Park was not the owner of Roses.  She did not clean Roses or cook for the employees of Roses.  She did not answer the telephone for Roses.  Nor did she collect the "house fees" or bring customers to the "girl's" room [sic].

(Citations to grand jury transcript omitted.)

The State also challenges conclusions of law nos. 16 and 17 and the circuit court's order.  They state:

> 16.    However, and most importantly, other than a valid Hawaii [Department of Commerce and Consumer Affairs (**DCCA**)] business registration as a limited liability company, ***there was absolutely no evidence of an "ascertainable structure distinct from the racketeering activity."***  Clearly, the evidence presented to the grand jury suggested the sole purpose of the alleged association was a house of prostitution.  All evidence provided to the grand jury indicated that individuals that frequented Roses received sexual favors for a fee.  The court noted in <u>Ontai</u>:
>
> > An ascertainable structure distinct from the racketeering activity is shown by applying a simple test developed by the Eighth Circuit: Set aside evidence of the predicate acts of racketeering; if there is still evidence of other legal or illegal acts that show an ongoing organization, there is a distinct structure.  [<u>United States v. </u><u>Lemm</u>, 680 F.2d [1193,] 1201 [(8th Cir. 1982)].
>
> 17.    The purpose of [Racketeer Influenced and Corrupt Organizations (**RICO**)] is to eradicate organized crime, rather than to subject ordinary criminals, such as sex workers, to the statute's heightened punishment.  <u>Ontai</u>, 84

Hawaiʻi at 63. Accordingly, *if you eliminate the "racketeering activity" i.e. the prostitution, there would be no ascertainable structure left*. Therefore:

> If no evidence is produced as to a material element of the offense, a person of ordinary caution and prudence could not have a "strong suspicion" that the defendant is guilty of the crime. Furthermore, because the enterprise element is the crucial element that distinguishes H.R.S. § 842-2 from the other offenses it is especially important that at least some evidence of an enterprise, as defined in this opinion, be presented to the grand jury.

State v. Ontai, 84 Hawaiʻi at 64, 929 P.2d at 77 (1996).

**ORDER**

The court concludes that *the prosecution failed to produce evidence of an enterprise*.

Accordingly, Count 1 of the indictment is dismissed.

(Emphasis added) (footnote omitted).

**STANDARDS OF REVIEW**

**Sufficiency of Evidence to Support Indictment**

We review the circuit court's determination of sufficiency of the evidence to support an indictment de novo using the right/wrong standard. State v. Taylor, 126 Hawaiʻi 205, 215, 269 P.3d 740, 750 (2011) (citing Ontai, 84 Hawaiʻi at 64, 929 P.2d at 77).

A grand jury indictment:

> must be based on probable cause. Probable cause is established by a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. The evidence to support an indictment need not be sufficient to support a conviction. In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury.

Ontai, 84 Hawaiʻi at 63, 929 P.2d at 76 (cleaned up).

6

### Findings of Fact and Conclusions of Law

Findings of fact are reviewed under the clearly erroneous standard. Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007) (citing cases). A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding or, despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. Id. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id.

A conclusion of law is reviewed de novo, under the right/wrong standard. Klink, 113 Hawaiʻi at 351, 152 P.3d at 523. A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned. Id. However, a conclusion of law that presents mixed questions of fact and law is reviewed under the "clearly erroneous" standard because the conclusion is dependent upon the facts and circumstances of the case. Id.

### Statutory Interpretation

Statutory interpretation is a question of law reviewable de novo. Yoshimura v. Kaneshiro, 149 Hawaiʻi 21, 33, 481 P.3d 28, 40 (2021).

## DISCUSSION

HRS § 842-2 (2014) provides, in relevant part:

> **§ 842-2 Ownership or operation of business by certain persons prohibited.** It shall be unlawful:
>
> . . . .
>
> (3)   For any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt.

To indict a defendant for violating HRS § 842-2(3), a grand jury must find probable cause to believe and conscientiously entertain a strong suspicion of the existence of the following elements: **(1)** an "enterprise"; **(2)** the defendant was "employed by" or "associated with" the enterprise; **(3)** the defendant "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise"; **(4)** through "racketeering activity" or collection of an "unlawful debt"; and **(5)** the defendant did so "intentionally, knowingly or recklessly." See State v. Bates, 84 Hawaiʻi 211, 220, 933 P.2d 48, 57 (1997) (listing elements of the offense). With this background, we discuss the State's points of error in reverse order.

> **1.   The circuit court's ultimate conclusion that "the prosecution failed to produce evidence of an enterprise" was wrong.**

HRS § 842-1 (2014) provides, in relevant part:

> "Enterprise" includes any sole proprietorship, partnership, corporation, association, and any union or group of individuals associated for a particular purpose although not a legal entity.

The circuit court's conclusion of law no. 16 stated: "other than a valid Hawaii DCCA business registration as a limited liability company, there was absolutely no evidence of an 'ascertainable structure <u>distinct</u> from the racketeering activity.'" Then, citing <u>Ontai</u>, the circuit court ultimately concluded "that the prosecution failed to produce evidence of an enterprise." These conclusions were wrong; a limited liability company is an "enterprise" within the meaning of HRS § 842-1.

<u>Ontai</u> is distinguishable on its facts. That case involved an alleged associated-in-fact enterprise (a crap game in a house in Waipahu) consisting of Ontai and Nagata; it did not involve a partnership, corporation, association, or other legal entity. It was in that context that the supreme court stated:

> In light of federal case law, we hold the following regarding the enterprise element of HRS § 842-2(3). We adopt the requirement in [<u>United States v. </u>]<u>Turkette</u>[, 452 U.S. 576 (1981)] that an enterprise must be an ongoing organization with continuity of personnel. We further adopt the majority view on the question of structure; an enterprise must have a structure above and beyond the racketeering activity in which it engages.
>
> The Eighth Circuit has developed a coherent and comprehensive definition which includes all the characteristics that we deem relevant to an "enterprise" under HRS § 842-2(3). Therefore, we adopt this definition. According to the Eighth Circuit, there are three characteristics of a RICO enterprise:
>
> > First, there must be a common or shared purpose that animates the individuals associated with it. Second, it must be an "ongoing organization" whose members "function as a continuing unit," <u>Turkette</u>, 452 U.S. at 583, 101 S.Ct. at 2528; in other words, there must be some continuity of structure and of personnel. Third, there must be an ascertainable structure distinct from that inherent in the conduct of . . . racketeering activity.

Ontai, 84 Hawaiʻi at 62, 929 P.2d at 75 (quoting United States v. Kragness, 830 F.2d 842, 855 (8th Cir. 1987) (citing United States v. Bledsoe, 674 F.2d 647, 664-65 (8th Cir. 1982), abrogated on other grounds by United States v. Lane, 474 U.S. 438, 440 n.1, 444-49 (1986))).

Kragness, the Eighth Circuit Court of Appeals case quoted in Ontai for the three-part definition of "enterprise,"[6] involved five defendants who were a "group of individuals associated in fact although not a legal entity." Kragness, 830 F.2d at 854. The cases cited by Kragness also involved individual defendants allegedly associated in fact to commit crimes. Id. at 854-55 (first citing Turkette, 452 U.S. at 578 (indictment described enterprise as "a group of individuals associated in fact for the purpose of illegally trafficking in narcotics" and committing other crimes); then citing United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir. 1982) (framing issue on appeal as "whether the government proved an 'association in fact' of various individuals[.]"); and then citing Bledsoe, 674 F.2d at 651 (indictment described enterprise as "a group of individuals associated in fact to fraudulently sell securities[.]")); see also State v. Martin, 103 Hawaiʻi 68, 75-76, 79 P.3d 686, 693-94 (App. 2003) (alleging associated-in-fact enterprise for purposes of extortion).

---

[6] 18 U.S.C. § 1961(4), part of the federal RICO statute, defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." See Turkette, 452 U.S. at 580.

By contrast, the indictment in this case alleged that the "enterprise" was Belabration and Roses Spa LLC. The supreme court in <u>Ontai</u> acknowledged that "[t]he extensive federal case law defining 'enterprise' is based on dicta found in [<u>Turkette</u>.]" <u>Ontai</u>, 84 Hawai'i at 61, 929 P.2d at 74. In <u>Turkette</u>, the United States Supreme Court stated:

> [18 U.S.C.] Section 1961(4) describes ***two categories*** of associations that come within the purview of the "enterprise" definition. ***The first encompasses organizations such as corporations and partnerships, and other "legal entities."*** The second covers "any union or group of individuals associated in fact although not a legal entity." . . . ***Each category describes a separate type of enterprise to be covered by the statute — those that are recognized as legal entities and those that are not.***

452 U.S. at 581-82 (emphasis added); <u>see also</u> <u>Lemm</u>, 680 F.2d at 1198 ("[R]equisite characteristics of an enterprise may, of course, be found in both a legal entity and an associational enterprise, as defined by RICO."); <u>Bledsoe</u>, 674 F.2d at 660 ("[A] co-op, as a legal entity, could clearly qualify as an enterprise under RICO[.]").

In <u>Ontai</u>, the Hawai'i Supreme Court recognized the distinction between the two types of enterprises when it explained, "The portion of the statutory definition relevant to this case is: '[A]ny . . . group of individuals associated for a particular purpose <u>although not a legal entity</u>.'" 84 Hawai'i at 60, 929 P.2d at 73 (underscoring added). In this case the circuit court found that Roses had "a valid Hawaii DCCA business registration as a limited liability company[.]" Under HRS § 428-201 (2004), "[a] limited liability company is a legal entity[.]"

11

Thus, the portion of the statutory definition of "enterprise" relevant to this case is not the one discussed in Ontai. Under the reasoning of Turkette, the State did present evidence to the grand jury that Roses — a legal entity — was an "enterprise" within the meaning of HRS § 842-1. The circuit court's conclusions to the contrary were error.

The circuit court's conclusion of law no. 17 stated: "if you eliminate the 'racketeering activity' i.e. the prostitution, there would be no ascertainable structure left." That conclusion was wrong. The circuit court correctly concluded that prostitution was "racketeering activity." See HRS § 842-1 ("'Racketeering activity' means any act . . . involving but not limited to . . . prostitution[.]"). However, the "ascertainable structure" in this case was the limited liability company, Roses. A legal entity constitutes a RICO "enterprise" even when the entity's sole purpose is unlawful activity. Turkette, 452 U.S. at 580-81 ("[T]he definition [of enterprise in 18 U.S.C. § 1961(4)] appears to include both legitimate and illegitimate enterprises within its scope; it no more excludes criminal enterprises than it does legitimate ones."); United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir. 1996) ("We know from Turkette that 'enterprise' includes illegal organizations, or illegal associations-in-fact, that have an exclusively criminal purpose."); Webster v. Omnitrition Int'l., Inc., 79 F.3d 776, 787 (9th Cir. 1996) ("Wholly unlawful enterprises fall within RICO's provisions."), cert. denied, 519 U.S. 865 (1996); United States

v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) ("RICO applies to wholly unlawful enterprises."), cert. denied, 469 U.S. 848 (1984); cf. Boyle v. United States, 556 U.S. 938, 948 (2009) ("[An associated-in-fact] group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the [RICO] statute's reach."); Kragness, 830 F.2d at 855 ("The [associated-in-fact] enterprise is an entity separate and apart from the pattern of racketeering activity in which it engages, although the proof of these separate elements may in particular cases coalesce.") (cleaned up) (underscoring added).

Ontai does not require a different result.  Again, Ontai involved two people (Ontai and Nagata) who had allegedly formed an associated-in-fact enterprise to conduct a crap game, which is a racketeering activity (gambling) under HRS § 842-1. It was under those facts that the supreme court stated:

> In the present case, no evidence was produced as to the continuity of the alleged enterprise.  There was no evidence that the crap game of June 15, 1991 was operating on a continuing basis rather than on an ad hoc basis.  There was no evidence that the personnel involved, Ontai and Nagata, were part of a continuing staff rather than independent actors.
>
> An ascertainable structure distinct from the racketeering activity is shown by applying a simple test developed by the Eighth Circuit:  Set aside evidence of the predicate acts of racketeering; if there is still evidence of other legal or illegal acts that show an ongoing organization, there is a distinct structure.  Lemm, 680 F.2d at 1201.  In the present case, *if we set aside the evidence of the crap game on June 15, 1991, no evidence is left*. Therefore, there was no evidence of a structure distinct from the predicate act of promoting gambling.

<u>Ontai</u>, 84 Hawaiʻi at 64, 929 P.2d at 77 (emphasis added).  <u>Ontai</u> is inapposite.  In this case, even if evidence of <u>Park's</u> prostitution is set aside, there is still evidence that four <u>other</u> persons (Okku, Lulu, Mama Sami, and Mama Tina) were allegedly "employed by or associated with" the enterprise on an ongoing basis for purposes of prostitution; the mama-sans on three occasions collected a $50 house fee from Jason in furtherance of the business of Roses; and the mama-sans also did the cleaning and cooking, answered the phones, and sent the enterprise's customers to the women's rooms at Roses.  The evidence established probable cause that the mama-sans directed the affairs of Roses within the meaning of HRS § 842-2.

For these reasons, we hold that the evidence presented to the grand jury was sufficient to establish probable cause that Belabration and Roses Spa LLC, a Hawaiʻi limited liability company, was an "enterprise" as defined by HRS § 842-1. Conclusions of Law nos. 16 and 17, and the circuit court's ultimate conclusion that "the prosecution failed to produce evidence of an enterprise[,]" were wrong.

2. **Finding of fact no. 9 was supported by substantial evidence and correctly applied the law to those facts.**

The circuit court's finding no. 9 (which is actually a combined finding of fact and conclusion of law) states:

> 9.    In short, the evidence against Yoonjung Park amounted to three acts of prostitution with [Jason].  There was absolutely no evidence presented that Yoonjung Park

14

> "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise through racketeering activity." Yoonjung Park was not the owner of Roses. She did not clean Roses or cook for the employees of Roses. She did not answer the telephone for Roses. Nor did she collect the "house fees" or bring customers to the "girl's" room [sic].

(Citations to grand jury transcript omitted.) The circuit court was right. The evidence that Park committed three acts of prostitution at Roses (with Jason) was not sufficient to establish that Park "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise" within the meaning of HRS § 842-2.

Our analysis begins with Bates. The defendant in that case argued that the term "associated with any enterprise" in HRS § 842-2(3) was unconstitutionally vague. Bates, 84 Hawaiʻi at 219, 933 P.2d at 56. The Hawaiʻi Supreme Court disagreed, noting:

> Other courts, although not in the context of a constitutional "void for vagueness" challenge to the RICO statute, have liberally defined the terms "associated with" to include any relationship of the defendant with the business of the enterprise. See Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) ("'[O]utsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise ***and participate in the conduct of its affairs — that is, participate in the operation or management of the enterprise itself***[.]").

Id. at 223, 933 P.2d at 60 (emphasis added). In Reves, the issue before the United States Supreme Court was the meaning of the phrase "to conduct or participate . . . in the conduct of such enterprise's affairs" as used in 18 U.S.C. § 1962(c). 507 U.S. at 177. The Supreme Court held:

15

As a verb, "conduct" means to **lead, run, manage, or direct**. Webster's Third New International Dictionary 474 (1976). Petitioners urge us to read "conduct" as "carry on," . . . so that almost any involvement in the affairs of an enterprise would satisfy the "conduct or participate" requirement. But context is important, and in the context of the phrase "to conduct . . . [an] enterprise's affairs," the word indicates **some degree of direction**.

. . . [U]nless one reads "conduct" to include an element of direction when used as a noun in this phrase, the word becomes superfluous. Congress could easily have written "participate, directly or indirectly, in [an] enterprise's affairs," but it chose to repeat the word "conduct." We conclude, therefore, that as both a noun and a verb in this subsection **"conduct" requires an element of direction**.

The more difficult question is what to make of the word "participate." . . . We may mark the limits of what the term might mean by looking again at what Congress did <u>not</u> say. On the one hand, "to participate . . . in the conduct of . . . affairs" must be broader than "to conduct affairs" or the "participate" phrase would be superfluous. On the other hand, as we already have noted, "to participate . . . in the conduct of . . . affairs" must be narrower than "to participate in affairs" or Congress' repetition of the word "conduct" would serve no purpose. It seems that Congress chose a middle ground, consistent with a common understanding of the word "participate" — **"to take part in."** Webster's Third New International Dictionary 1646 (1976).

Once we understand the word "conduct" to require some degree of **direction** and the word "participate" to require some part **in that direction**, the meaning of § 1962(c) comes into focus. **In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs**. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but <u>some</u> part in **directing the enterprise's affairs** is required.

<u>Id.</u> at 177-79 (bold italics added) (footnotes omitted).

By contrast, courts in states that have not adopted the participate "in the conduct" language of the federal RICO statute do not require that the defendant play any part in "directing the affairs" of the enterprise. <u>See, e.g.,</u> <u>Keesling v. Beegle</u>, 880 N.E.2d 1202, 1206, 1208 (Ind. 2008) (concluding Indiana RICO

statute, which imposed liability "both on persons who *conduct the activities of* a racketeering enterprise and on those who *otherwise participate in the activities of* a racketeering enterprise[,]" was intended "to reach a racketeering enterprise's 'foot soldiers' as well as its 'generals,'" such that "the level of participation necessary to implicate the Indiana Act need not rise to the level of direction[.]"); <u>Michigan v. Martin</u>, 721 N.W.2d 815, 843-44 (Mich.Ct.App. 2006) (holding under Michigan's RICO statute, which makes it unlawful to "'knowingly conduct or participate *in the affairs of the enterprise*[,]' . . . prosecution was not required to demonstrate that defendant held a position of authority within the enterprise, but only that he conducted *or participated* in its affairs through a pattern of racketeering activity."); <u>Ohio v. Siferd</u>, 783 N.E.2d 591, 603 (Ohio Ct.App. 2002) (holding under Ohio RICO statute, which used language "participate in, directly or indirectly, the affairs of a criminal enterprise" and did not repeat the word "conduct," "participatory conduct or activities may be found in acts that . . . do not exert control or direction over the affairs of the enterprise.").

Like the federal RICO statute, HRS § 842-2 makes it unlawful for a person to "conduct or <u>participate in the conduct</u> of the affairs of the enterprise through racketeering activity[.]" (Underscoring added.) Accordingly, we adopt the reasoning of the United States Supreme Court in <u>Reves</u>. We hold that to show a defendant participated "in the conduct of the

affairs of the enterprise[,]" the State must show that the defendant had some part in directing those affairs.

In this case, there was no evidence presented to the grand jury that Park played any part in directing the affairs of Roses within the meaning of HRS § 842-2. The circuit court's conclusion that the evidence before the grand jury did not show that Park "conduct[ed] or participate[ed] in the conduct of the affairs of" Roses was correct. For that reason, we hold that the circuit court correctly dismissed the indictment as to Park.

## CONCLUSION

Based upon the foregoing, the circuit court's "Findings of Fact, Conclusions of Law and Order Granting Motion to Dismiss Count 1 of the Indictment[,]" as to Park is affirmed.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant
State of Hawaiʻi.

William A. Harrison,
for Defendant-Appellee
Yoonjung Park.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge