**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000688
30-OCT-2024
08:18 AM
Dkt. 43 SO

NO. CAAP-23-0000688

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
STEVEN RAY SIMPSON, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-22-0000507)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Presiding Judge, McCullen and Guidry, JJ.)

This appeal challenges the dismissal without prejudice of a grand jury indictment for a 1978 murder based on insufficient evidence of probable cause. We affirm.

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the October 24, 2023 "Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)] and Order Granting [Defendant-Appellee Steven Ray Simpson (**Simpson**)'s] Motion to Dismiss Indictment" (**Order Granting Dismissal**) filed by the Circuit

Court of the Third Circuit (**Circuit Court**).[1]  The Circuit Court concluded that there was "insufficient competent evidence" due to lack of foundation for two critical pieces of evidence: (1) a blue plastic tarp, purportedly recovered at the crime scene, which contained Simpson's fingerprint, and (2) "pubic combings," purportedly taken from the decedent's body, which contained Simpson's DNA.

On appeal, the State contends that the Circuit Court: **(1)** "abused its discretion in granting the Motion to Dismiss because 'competency of the evidence' before the grand jury only applies to accusations of prosecutorial misconduct"; and **(2)** "abused its discretion in substituting its judgment for the grand jury in determining the sufficiency of the evidence regarding the foundation of the evidence."[2]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Simpson's points of error as follows, and affirm.

---

[1]     The Honorable Peter K. Kubota presided.

[2]     The points of error refer to an "Objection" to the "Proposed [FOF]s, [COL]s and Order Granting Motion to Dismiss Indictment" (**Objection**), but do not identify any specific FOFs and COLs in the Order Granting Dismissal that the State is challenging on appeal.  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(C) (requiring "either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions").  The State also does not present argument specific to any FOFs or COLs.  See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").  Unchallenged FOFs are binding.  See State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019).  Even if we were to consider the State's Objection, it does not show that the proposed findings were clearly erroneous, where the Objection:  summarily refers to the proposed findings by number only; indicates the State "objects" with a brief reason; and contains no legal argument for any objection.

On June 23, 2022, the State indicted Simpson for the 1978 murder of Valerie Warshay (**Warshay**) in Puna, Hawaiʻi, in violation of Hawaii Revised Statutes (**HRS**) § 707-701(1).[3]

On March 16, 2023, Simpson filed a "Motion to Dismiss Indictment" (**Motion to Dismiss**) arguing that "[i]ncompetent evidence" and "[e]xcessive use of hearsay evidence denied [Simpson] a fair grand jury proceeding[,]" and that "[i]nsufficient evidence was presented to support a finding of probable cause[.]" The State opposed the motion.

The Motion to Dismiss attached the transcript of the grand jury proceeding, which contained the testimonies pertinent here, of retired Hawaiʻi County Police Department (**HIPD**) Officer William Perreira (**Officer Perreira**), HIPD Detective Derek Morimoto (**Detective Morimoto**), and an acquaintance of Warshay named Raymond Dana James (**James**). Officer Perreira testified that he attended the autopsy of Warshay's body, and he responded affirmatively when the prosecutor asked if there were "items taken from [Warshay's] body for forensic purposes such as hair and fingernail clippings[,]" and if he "watched those [items] be collected[.]" Detective Morimoto testified that: "there was a blue tarp that [Warshay's] body was found laying on, [and] two items of swimwear near the body"; the FBI "had developed a fingerprint on the blue tarp"; that fingerprint matched Simpson's "right ring finger"; "Forensic Analytical took swabbings from the . . . teeth of the comb that was used to

---

[3] The Indictment charged that "[o]n or about April 22, 1978 through April 23, 1978 . . . STEVEN RAY SIMPSON intentionally or knowingly caused the death of another person, Valerie Warshay," committing the offense of "Murder," in violation of HRS § 707-701(1) (1976), which provided: "a person commits the offense of murder if he intentionally or knowingly causes the death of another person."

3

collect the pubic hair samples from [Warshay's body], and . . . there was a sperm, uh, fraction . . . discovered"; and Simpson was identified as "[t]he major contributor" and "[t]he minor contribut[or] was [ ] James." James testified that he met Warshay at Harry K. Brown Park, that they "spent the night together[,]" and that it did not surprise him that his DNA was present on some items of Warshay's.

At the September 20, 2023 hearing on the Motion to Dismiss, the Circuit Court received the grand jury transcript into evidence; and following arguments from both parties, orally granted the motion. The Circuit Court noted "there was no foundation laid as to either of the two key pieces of evidence," leading to "huge leaps in the evidence considered by the grand jury[,]" because "[n]o one ha[d] testified with personal knowledge that either item was collected from the crime scene or the victim."

The Circuit Court's October 24, 2023 Order Granting Dismissal concluded that the tarp and pubic combings constituted incompetent evidence for lack of foundation, rendering the remaining evidence presented to the grand jury insufficient to establish probable cause, as follows:

> <u>FINDINGS OF FACTS</u> [sic]
>
> . . . .
>
> 32. The State's case was based upon [Simpson]'s fingerprint which was located on a purported blue tarp which Warshay was found lying on[,] and DNA analysis of Warshay's pubic combings;
>
> 33. <u>[Detective] Morimoto testified that while he found the blue tarp in evidence, he had no knowledge of the recovery of the blue tarp, i.e. whether that tarp was in fact a tarp that Warshay was lying on</u>.

34. There was no evidence presented to the grand jury that the tarp in the police evidence room was in fact a tarp that Warshay was lying on;

35. [Officer] Perreira did not testify that he saw the tarp when he arrived at the crime scene nor did he testify that the police recovered a tarp;

36. There being no evidentiary foundation established, the tarp and its forensic value was inadmissible and incompetent evidence;

37. There was no evidence that police recovered pubic combings from Warshay's body;

38. [Officer] Perreira did not testify that pubic combings were recovered;

39. There was no evidence presented to the grand jury that the purported pubic combings which Forensic Analytical analyzed actually came from Warshay;

40. There being no evidentiary foundation established, the pubic combings and its forensic value was inadmissible and incompetent.

41. The Court reviewed the issue of hearsay evidence presented to the grand jury and finds that there was not excessive use of hearsay evidence presented;

42. The incompetent and inadmissible evidence violated [Simpson]'s due process right to a fair and impartial grand jury proceeding;

43. Without the incompetent and inadmissible evidence, evidence presented was insufficient to establish probable cause;

### Conclusions of Law

. . . .

3. The State's case was based upon [Simpson]'s fingerprint which was located on a blue tarp which Warshay was purportedly found lying on[,] and DNA analysis of Warshay's pubic combings;

4. There was no evidence that the tarp in evidence was in fact a tarp that Warshay was lying on;

5. The tarp and its forensic value was inadmissible and incompetent evidence.

5

6. There was no evidence that police recovered pubic combings from Warshay's body.

7. There was no evidence that the purported pubic combing which Forensic Analytical analyzed actually came from Warshay;

8. The pubic combings and its [sic] forensic value was [sic] inadmissible and incompetent;

9. The incompetent and inadmissible evidence denied [Simpson] of [sic] his right to a fair grand jury proceeding;

10. The Hawaii Supreme Court in State v. Okumura, indicated:

> Probable cause means such a state of facts as would lead a person or [sic] ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of guilt of the accused. . . .

59 Haw. 549, 551, 584, P.2d 117, 119 (1979).

11. Disregarding the incompetent and inadmissible evidence, there was insufficient evidence to support the finding of probable cause;

12. Based on insufficient competent evidence presented, the indictment must be dismissed.

(Emphases added.) The State timely appealed the Order Granting Dismissal.

"An appellate court reviews a trial court's decision to dismiss an indictment for abuse of discretion." State v. Wong, 97 Hawaiʻi 512, 517, 40 P.3d 914, 919 (2002) (citing State v. Chong, 86 Hawaiʻi 282, 288 n.2, 949 P.2d 122, 128 n.2 (1997)). Where the issue "involves sufficiency of the evidence to support an indictment, we review the circuit court's order de novo." State v. Taylor, 126 Hawaiʻi 205, 215, 269 P.3d 740, 750 (2011) (citing State v. Ontai, 84 Hawaiʻi 56, 59, 64, 929 P.2d 69, 72, 77 (1996) and State v. Ganal, 81 Hawaiʻi 358, 367, 917 P.2d 370, 379 (1996)).

**(1) The Circuit Court's dismissal on grounds that the evidence was insufficient to establish probable cause due to incompetent evidence, without a finding of prosecutorial misconduct, was not an abuse of discretion.**

The State asserts, based on language from Hawaiʻi cases, that "[o]nly if a claim of prosecutorial misconduct is raised can the competency of the evidence be attacked." The State relies on language from, inter alia, Chong, 86 Hawaiʻi at 289, 949 P.2d at 129 ("The function of grand jury to protect against unwarranted prosecution does not entail a duty . . . to determine that the prosecution's case is supported by competent evidence." (citation omitted)), and Wong, 97 Hawaiʻi at 518, 40 P.3d 914 at 920 (holding that because a "grand jury proceeding is not adversary in nature[,] . . . an indictment may not be attacked on the ground of the incompetency of the evidence considered by the grand jury, where prosecutorial misconduct is not involved" (citation omitted)). Accordingly, the State argues that "[t]he Indictment should not have been dismissed absent a showing of prosecutorial misconduct." The State claims that the record does not reflect any prosecutorial misconduct and maintains that it "did not step outside the bounds of a proper presentment to the Grand Jury."

A grand jury's function is to determine whether probable cause exists to support the commencement of criminal prosecution. See Ganal, 81 Hawaiʻi at 367, 917 P.2d at 379 ("A grand jury indictment must be based on probable cause."); Hawaiʻi Const. Art 1, § 10. "'Probable cause' has been defined as 'a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'" Taylor, 126 Hawaiʻi at

7

218, 269 P.3d at 753 (quoting <u>Ontai</u>, 84 Hawaiʻi at 63, 929 P.2d at 76). "[S]ufficient legal and competent evidence before a grand jury which establishes probable cause that a suspect has violated the law will support an indictment." <u>State v. Kuba</u>, 68 Haw. 184, 190, 706 P.2d 1305, 1310 (1985) (citing <u>State v. Scotland</u>, 58 Haw. 474, 476, 572 P.2d 497, 498 (1977)). "[W]here sufficient legal and competent evidence is presented to a grand jury, the reception of illegal or incompetent evidence would not authorize the court to set aside an indictment if the remaining legal evidence, considered as a whole, is sufficient to warrant the indictment." <u>State v. Chong</u> (**ICA Chong**),[4] 86 Hawaiʻi 290, 295, 949 P.2d 130, 135 (App. 1997) (quoting <u>Scotland</u>, 58 Haw. at 476, 572 P.2d at 498).

Applying these principles here, a trial court reviewing a challenge to an indictment based on sufficiency of evidence to establish probable cause considers whether the record of the grand jury proceeding contains "<u>sufficient</u> legal and <u>competent evidence</u>" to support the indictment. <u>See</u> <u>Kuba</u>, 68 Haw. at 190, 706 P.2d at 1310 (emphasis added). The Circuit Court's competency of evidence analysis did not have to be tethered to a review for prosecutorial misconduct when it was determining whether there was sufficient evidence to establish probable cause to indict Simpson for Warshay's murder. <u>See</u> <u>id.</u>; <u>ICA Chong</u>, 86 Hawaiʻi at 295, 949 P.2d at 135. It was not an

---

[4]    <u>ICA Chong</u> is a 1997 opinion from the Intermediate Court of Appeals (**ICA**), and was not overturned on supreme court review in <u>Chong</u>, 86 Hawaiʻi at 290, 949 P.2d at 130. The supreme court affirmed <u>ICA Chong</u>, holding that "the prosecution's use of pre-scripted questions and answers . . . [for] its grand jury witnesses . . . did not so clearly infringe upon the jury's decision-making function and was not so innately prejudicial that the practice—in and of itself—violated Chong's right to due process of law by invading the province of the grand jury." <u>Id.</u> at 289, 949 P.2d at 129.

abuse of discretion for the Circuit Court to determine that certain evidence was incompetent in its sufficiency-of-evidence-to-establish-probable-cause analysis leading to the dismissal of the indictment in this case.  See Wong, 97 Hawaiʻi at 517, 40 P.3d at 919.

> **(2)  The Circuit Court did not improperly "substitut[e] its judgment for the grand jury" when it concluded there was insufficient evidence to support the indictment.**

The State argues that the Circuit Court "abused its discretion in substituting its judgment for the grand jury in determining the sufficiency of the evidence regarding the foundation of the evidence."  The State asserts that it "is entitled to legitimate inferences that the physical and forensic evidence testified to is linked to the case," contending that "[t]he State does not need to show a rigorous chain of custody at a grand jury presentment" and "[t]he Grand Jury was entitled to make the inference that the evidence was precisely what it purported to be, and then connect Simpson to the charge in the Indictment."[5]

The Circuit Court's determination that there was insufficient evidence to establish probable cause to support the indictment was based on the following unchallenged findings. See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.  Regarding the tarp, the Circuit Court found in FOFs 33-35 that:  Detective Morimoto "had no knowledge of the recovery of the blue tarp"; the State did not present evidence "that the tarp in the police evidence room was in fact a tarp that Warshay was lying on"; and

---

[5]     The State makes no argument based on Hawaiʻi Rules of Evidence (**HRE**) Rule 1101(d)(2), which states that the HRE are inapplicable in grand jury proceedings.

Officer Perreira "did not testify that he saw the tarp when he arrived at the crime scene nor did he testify that the police recovered a tarp[.]"  Regarding the pubic combings, the Circuit Court found in FOFs 37-39 that:  "[t]here was no evidence that police recovered pubic combings from Warshay's body"; Officer Perreira, whom the record reflects attended the autopsy, "did not testify that pubic combings were recovered"; and the State did not present evidence "that the purported pubic combings which Forensic Analytical analyzed actually came from Warshay[.]"

We review the Circuit Court's conclusions based on these unchallenged findings de novo.  Taylor, 126 Hawai'i at 218, 269 P.3d at 753.  The COLs pertinent here, COLs 5, 8, 11, and 12, stated:  "[t]he tarp and its forensic value was inadmissible and incompetent evidence"; "[t]he pubic combings and [their] forensic value [were] inadmissible and incompetent"; "[d]isregarding the incompetent and inadmissible evidence, there was insufficient evidence to support the finding of probable cause"; and that "[b]ased on insufficient competent evidence presented, the indictment must be dismissed."  These COLs were not erroneous.  See id.; Kuba, 68 Haw. at 190, 706 P.2d at 1310; ICA Chong, 86 Hawai'i at 295, 949 P.2d at 135.  Therefore, the Circuit Court did not "substitut[e] its judgment for the grand jury," and did not abuse its discretion in dismissing the indictment based on these conclusions that the evidence was insufficient to establish probable cause.  See Wong, 97 Hawai'i at 517, 40 P.3d at 919.

For the foregoing reasons, we affirm the October 24, 2023 "Findings of Fact, Conclusions of Law and Order Granting

Motion to Dismiss Indictment," filed and entered by the Circuit Court of the Third Circuit.

DATED:  Honolulu, Hawai'i, October 30, 2024.

On the briefs:

Annaliese H. Wolf,
Deputy Prosecuting Attorney
for Plaintiff-Appellant.

Keith S. Shigetomi,
for Defendant-Appellee.

/s/ Karen T. Nakasone
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge